It's now open and in session. The State of the United States is on the point. Thank you. Please be seated. We have argument today in one case. In Re Princo Corporation Mandamus action Let's see, we have Mr. Wiesenberg for the petition. Is that the right pronunciation? Your name Wiesenberg or Wiesenberg? Long E, Wiesenberg. Mr. Wiesenberg. Good afternoon. I'm Eric Wiesenberg. I'm after the Princo Corporation, Princo America petitioner and defendant. With me is Cynthia Wittsman from the Oreck firm. May it please the court. The district court below in its actions can only be described as open defiance of the statute. By the words of the very order of the district court issued on October 24th, it sought to eliminate the very same issue that requires the mandatory stay under 1659. By doing that, it's out constitute a prohibited observation of judicial authority. Let me ask you a question. The statute uses the word final. And it seems to me that that raises a question as to what's meant by final. As to whether final means when the ITC is done with it or whether it means when all ITC proceedings and judicial review proceedings are concluded. And final is a word that appears in a lot of different statutes and has different meanings in different places. Sometimes it just means the initial decision. Sometimes it means final for purposes of no further judicial review. I have two questions. One is which of those constructions here is correct? Does final mean throughout the proceedings for judicial review? And if it does mean the latter throughout the judicial review period, have you been diligent in requesting a stay pending judicial review? I know that you did seek it from the district court, but I don't recall that in the proceedings here that you sought a stay pending judicial review. I may be wrong about that. Do I make myself clear? You do. In answer to your first question, we looked into that very issue as we were also interested in that. We found no published opinions on how the word final meant in the context of 1659. However, we did find a very clear enunciation of what final meant in this court's application of 1295 as jurisdictional statute, which also uses the word final determination. And that comes from the case of crucible materials. And in that case, it said a final determination is a final disposition by the commission whereby it resolves the matter on merits and either issues an order excluding articles or doesn't issue them. But that's part and parcel of the final order requirement I take it typically is a requirement of appellate jurisdiction from any kind of tribunal. The decision of the lower tribunal has to be final because you don't want interlocutory appeals frequently coming up. There, the finality, the notion of finality does seem fair. It's hard to think of any other construction to be that tribunal is finished for now. But the language of the statute, as Judge Dyke points out, is rather different from that. It says until the determination of the commission becomes final, which isn't the same thing it seems to me as a final order of the commission. Because an order, a determination becomes final typically when there's no further opportunity for modification at least absent some form of that language isn't more readily amenable to the until the commission's action is no longer directly reviewable by a court or even within the commission. I wouldn't say that that's an unfair construction, although I found nothing to support that. As I said, I looked at the cases related to 1295. Certainly the commission called its own order final. When the appellate court reviewed it, they said, in fact the first page of the remand to the ITC said it would be a final determination. The parties treated it as final. When we went back in front of Judge Bryant in the Southern District, he treated it as final. There was consensus amongst the litigators. It seemed to be the Federal Circuit, the Commission, and the District Court all treated it as final when it issued out of the commission. And everything I saw would suggest that that's the appropriate way to think of it. Let me understand the sequence of events here. If I understand it correctly, Prinko was not originally a party to the commission proceeding. Prinko intervened, correct? That's correct. Was that after Prinko was involved in the District Court proceeding? That's correct. There's a District Court proceeding, at least vis-a-vis Prinko. There's a District Court proceeding brought against Prinko. I take it during the period that the District Court proceeding against some defendants, did that anticipate the commission? Which began with respect to some defendants before the other? The District Court case began... Okay, so the District Court case begins. Prinko is made a party to the District Court proceeding at the beginning. That's right. Then the commission action begins. Prinko is not a party to that at the outset. Then Prinko moves to intervene, and that motion is granted by the commission, I take it? And then you promptly go into the District Court and ask the District Court to stay based on Prinko's now being a party to the commission proceeding. That's correct. Okay. Now, when the commission proceeding terminates, at least for the time being, with a final commission order, pending appeal to this court, well, first of all, does the District Court, after you make that initial motion, does the District Court do anything with respect to that motion? It's granted on the post. Okay, it's granted for the time being. Okay. Right. Now, the commission decides its case, and then the District Court says okay, we're back in the saddle, and the District Court starts up the proceedings again. That's correct. And that's all going on co-pending with the appeal in this court. That's right. In what we call Phillips I. That's right. Okay, and then when Phillips I goes back to the commission, and help me with the sequence of events then. By the time the ITC case is remanded to the commission, the District Court case is now on appeal to the Federal Surgeon. Okay. So the District Court disposed of that case before we decided the appeal. That's right. Okay. Then this court remanded back to the District Court on April 20th. That's when the mandate was documented in the District Court. Less than two weeks after that, Pritko again asked for a 1659 stay, and Pritko repeated that request four times until the District Court dealt with that request in any meaningful manner. Okay, now going back to the time that the District Court lifted the stay, did the parties take a position at that point as to the authority of the District Court to go ahead with proceedings after the commission had entered its first quarter? It was Phillips' position and they asked the court to lift the stay that they wanted the District Court proceeding to move forward. Did you take a position at that time? We took the position and requested that the court stay the proceeding pending the completion of the appeal of the ITC Act to resolve at all. So, as soon as the issue of the lifting of the stay came up, you at that time, now I'm talking about not the most recent remand, I'm talking about at the time the District Court started the initial summary judgment proceedings. We did. And you said, keep the stay in effect. We did. And what did the District Court do? It did not. Did it issue an opinion about that? I believe it signed the submission that Phillips offered, I believe. I can double check on that. I don't think it had a separate order. Okay, and then what did you do at that point? This is the concern that I have. If, in fact, the final means pending appeal, maybe you should have done something more at that point, such as sought a mandamus from us or raised it as an issue in the courts. Were you diligent in pursuing the theory that the case should have been stay pending appeal also? There shouldn't have been an appeal, but the whole case should have been stay. We put on the record that we objected to the continuation of the District Court proceeding, that it should stay until the completion of the appeal of the ITC matter, or until that ran through to completion. But that was the last act we took prior to the scenario that I think relates more directly to whether or not we were timely under 1659 here. So you never asked us at that point to stay the appeal or to recognize that the District Court proceeding should be continued to be stayed? That's correct. The next time we visited the Federal Circuit was when we were in front of Judge Bryant on June 14th. He made it clear that he thought the mandate 2006. But to focus in on Judge Dyke's question, you have an appeal here from which that mandate was the result. And his question is, as I understand it, and I have the same question, nowhere that I can recall in that appeal did you say this appeal should not be proceeding because this case, this whole case should be stayed. Just so I'm clear on the question, you're talking about the Phillips II appeal? Right. We did not. So you went ahead with that appeal. We did. Now the question really would be, then, have you in effect waived whatever rights you have to the continued non-proceeding of the whole District Court litigation by virtue of not having pressed upon us at the time that you had an opportunity to in Phillips II. I understand the question. Our analysis, and I see Go ahead. We'll give you enough time to argue. The analysis of Pritko at the time was that that final event, the final determination by the ITC as it issued its order, we understood the District Court and the Court of Appeals to treat the word final as saying consistent with 1295. We did ask the District Court not to proceed when it came back down. And he declined that invitation. But when it then went on to appeal here, we did not rehabilitate that request. So you pressed your request for a stay at the District Court when the ITC case was remanded, but you did not press the request for a stay on appeal in that case. Procedural history is a little confusing. When the case was remanded to the District Court, that's the first time the same issues were pending before the ITC and the District Court. It's at that point when Phillips asked to have the stay lifted that we asked that the stay be kept in place pending completion of the ITC. Let the ITC look at what the Federal Circuit's instructions were. Let them complete the process. That's when the District Court declined that invitation to stay its proceedings. Then we went forward. And then we went through where we are now. This is the chronology. So you opposed Phillips' request to lift the stay? We did. But you did not independently seek to enforce a stay pursuant to section 1659? We did not independently pursue that until after the mandate came back from this court in what we're calling Phillips 2. That's when we believe the same issues were co-pending before the ITC and the District Court. And that's where we were, I think, only described as diligent as we can be. We asked five times. You asked us for a clarification of the mandate. That's when we issued the order saying, well, the District Court isn't barred from doing what you're asking it to do. That's exactly right. Substantively, I'd like to observe Don't worry. We'll give you enough time to argue. I know the tyranny of the lights can sometimes be ferocious, but we'll be somewhat relaxed here. We thought that the joining of the common issues occurred upon the entering of the mandate in April 20th of 06. We asked the District Court on a number of occasions, and there's no dispute about this, all of them within 30 days, if you're going to find a 30-day rule on a remand environment to reimpose the 1659 state. And the District Court persistently refused to do that. And when we finally got to the substance of it on June 14th, Judge Bryant said, you need to get a recall. You need to get the Federal Circuit to recall its mandate, because I treat this mandate as saying I must proceed, that I have got to proceed with this case. And this position was encouraged by Phillips. They said, that's correct, Your Honor. The mandate in Phillips 1 would not have issued if the Federal Circuit, or they knew that they issued the Phillips 1 mandate, they wouldn't have issued the Phillips 2 mandate if they didn't expect you to proceed, so you need to proceed. And then Bryant said, go get a recall. We went to get a recall, but while that request for a recall was pending, he set the summary judgment order, the summary judgment schedule. So at that point, at the time that he had set the summary judgment order, we had requested a stay four times, and there was a motion pending to this court to recall the mandate, which we anticipated would come out as it did, that the mandate has nothing to do with the court's capacity to deal with 1659. But what is your construction of 1659? When it says final, how do you construe that? Do you understand that to mean final initially, or final including possible appeals, or what's your interpretation of it? Our interpretation is it's consistent with 1295 and consistent with what we understand all the litigants, the District Court and the Federal Circuit, to treat it as final. They all refer to the ITC's decision as final. But we haven't decided that, and the same language becomes final. For example, the Supreme Court's decision in Clay, very different context to be sure, but same language, different purposes, was interpreted to mean including judicial review. That's a post conviction remedy. Not understandably very different, but certainly that language could be construed to include the appeal, and do you contend that if it does include the appeal, that you were not diligent? Do you agree that you were not diligent in pursuing a stay with this Court? I don't know if I could concede that you weren't diligent. We did ask the District Court. We did not take any other action with this Court. But I don't believe that the construction of final in that matter is a fair construction, particularly in this environment. The ITC Yeah, I understand. I'll give you a chance to respond to the statutory construction issue, but just for the moment, just assuming hypothetically that we say final means including appeals, were you diligent in pursuing it? I'm a bit troubled by that. We did ask the District Court not to proceed. Beyond that, no action was taken until the remand from the Phillips II appeal, and then we believe there were co-pending issues in the ITC and the District Court. So to the extent that our requesting the District Court to state a proceeding was diligent, we were diligent. If this Court has a different view of our conduct, then I can't speak to that. But we did raise it with the District Court, but it seemed as if there was consensus as to what the word final meant. And I saw nothing. I certainly appreciate the Court's analysis that it could go up on appeal and come back down, and why don't we let that process finish? My concern with that is, as this Court knows, oftentimes the ALJ and the Commission review is quite comprehensive. The ALJ's decision here was almost 500 pages. The Commission only reviewed a small portion of that. That portion then went up on appeal. It would seem strange to me if you would have bits and pieces going up to the Federal Circuit, coming back to the Commission, and this whole time the District Court can't act. But the problem that you have is that you end up with a start and stop stay. That while the matter is pending before the Commission, you have a stay, but then it goes up to the Court of Appeals, the District Court can go forward, then it has to stop again when the case comes back to the Commission. In terms of the purpose of 1659, it would seem a bit odd to have that sort of stop and start procedure. Well, I suppose I see 1659 a little bit differently, respectfully. The expressed legislative history, the intent of that statute is to not force a litigant to try two cases at the same time. Now, working on an appeal at the same time that perhaps there's a trial going on, I think, presents less of a problem, not that it doesn't resolve the problem, but presents less of a problem. That's what the genesis of 1659 was, was to prevent this notion of a foreign importer being stuck in two different courts while a domestic manufacturer is not. I mean, the legislative history is not contested on that, and Phillips, I think, articulated that in their brief. That seems to me to be more consistent with what made me start and stop scenario. And I think the statutory language, with the exception of potentially final, is clear on what its preconditions are and what its effects are. And those also are, I believe, consistent with seeing final in this manner and allowing perhaps start and stop to proceed. Now, what, just so we're up to date here, because this is a mandamus, there's no stay from us, obviously, in effect, so I assume that proceedings are ongoing in the district court. I noticed that in the papers there was a reference to a proposed district court hearing on the 10th of December. Has the district court continued moving in the direction of a resolution of the damages issue, including the December 10th hearing, or where do we stand on that? Yes, it has continued to proceed forward, and here is the status. And this underscores why the urgency of this court's action to vacate the order and stay in the district court is so urgent. The district court has now set a damages case for March 5th to commence. So that's just about six weeks away. And one of the other concerns of PRINCO in this matter is that after the district court issued its October 24th order, and we think that that order suffered from some serious defects that would have been resolved had it had the benefit of the ITC record, which 1659B contemplates that it does have the benefit of the thought-out, thorough analysis of the ITC. Phillips has taken that October 24th order and gone to the ITC and said you now have an order that's going to be collateral estoppel and issue preclusion to you. So we're now concerned that the ITC is saddled with an order that came out of the district court improvidently, I think is wrong, and some of the, many of the errors could have been corrected had it seen the ITC record. And the ITC now will have to labor under that order. How does it conform its activities, its order, its analysis to what Judge Bryant did? Well, I think you've answered my next question, which was going to be what relief you want. You obviously want more than simply Mandamus directing the district court to stop any further proceedings. I'm going to infer from your last comment that you would like an order directing the district court  no pro-tunc as of when? The beginning of June? No pro-tunc. I would say as of April 20th, when the mandate came down and we asked to have the district court proceed instead. And then of course to vacate the October order and instruct the ITC to disregard that. This court instructed the ITC to resolve the remaining issues, including time, the same issues in front of the district court, in light of the Phillips 1 requirement. The Phillips 1 teaches. What the ITC now must do, at the request of Phillips, is try to conform its analysis not to the Phillips 1 order, but to Judge Bryant's order, which we think is a deeply flawed order. So yes, we need to correct what happens in the ITC. We can do that now. We need to correct what happened in the district court. We can do that now. We are being forced, Princo, to litigate in two forms today and we will be forced to do it tomorrow if this court doesn't force the district court to apply 1659. The remedy is real and the costs are real and it's something that can't be corrected. It's not, as Phillips suggests, a meaningless request. The prejudice is happening today and it will happen tomorrow and it will continue to happen as long as the order sits in the ITC and Princo is forced to litigate in two forms, precisely what 1659 was designed to prevent. And that is the nature of our requested remedy, our requested relief. The justification of that order is staying in the district court opinion. Proceeding. I think we have your case. We will reserve your rebuttal time and we'll give Mr. Beeney an extra 10 minutes in the event that he needs it just to even up things. It will save you rebuttal time. Thank you. Mr. Beeney. Good afternoon, Your Honors. What I'd like to try to accomplish this afternoon without overstating my welcome is to first address the issue Your Honors have discussed with Mr. Westenberg about what final means and whether that issue has been waived. Second, discuss why granting a witness at this time will have absolutely no practical effect on any of the parties or the two tribunals. It only has no practical effect because the judge arguably violated the requirements of 1659. It will have no practical effect, and I use the word practical to mean that while it may tell the district court that it erred, although I would like to try to convince Your Honor that it certainly did not, but it will have no practical effect on what happens with the parties. Well sure, we could order the judgment he entered be vacated because it was entered without regard to the requirements of 1659, right? And then we could wait until the IPC determination is final, and then the judge would do just what Your Honor has instructed it to do in this appeal, which is to apply Phillips 1 and the judge would issue the same order again. But if I may, I'd like to address the issues that Your Honor discussed with Mr. Westenberg, then get to that issue. The concern seemed to me to be the other way, not so much how the district court order would be affected, but rather concern with the potential collateral estoppel effects of the district court order on the commission. And why is that not, doesn't that have some practical significance? I think it does, Judge Weissen, and that is because the third reason I'd like to get to, which is that there are not common issues pending before the ITC. I don't want to get you out of order. No, that's all right. I'll give you that headline. Okay, that's fine. But I absolutely do want to get to that. But I think it's important to get back to the first issue Your Honor has raised, because in some respects, I think Mr. Westenberg had the facts slightly incorrectly. The ITC issued its final ruling. First, tell us what your construction of the statute is. Has it been your view that it means final in terms of the ITC entering in a field of order, or in your view, does final mean final including the opportunity for appeal? I think it does mean final once the ITC issues its order for the following reasons. First, there's nothing in the statute that suggests that the use of the word final is different from the use of the word final in terms of this Court's appellate jurisdiction from an ITC order. Congress gave no indication that it means anything differently. Second, Your Honor, this issue in August of this year, Fujifoto Film, and this is at 463. It was on the panel, but it doesn't really address this issue because in Fuji there was no, the appeal was over with by the time the district court started. Well, I think there's language, if I may respectfully judge, in Fujifoto that cannot be reconciled with saying that final in 1659 means anything different than the way the ITC issued its determination. When the ITC issued its determination in that October 56, this Court said by requiring the district court to stay the proceedings, quote, until the determination of the commission becomes final, section 1659 necessarily suggests that after a final determination by the commission, the district court may resume its consideration of the civil action. And that's exactly what happened here. That once there's a final determination by the commission, the district court resumed the case. But in Fuji, it is correct, is it not, that the context in which we were that the ITC proceeding had been final at the ITC level and an appeal had been completed by us sending it back and the exclusion order was for all purposes final. There was no possibility of further judicial review. That is correct. All I'm suggesting is that language suggests that 1659 means final. That means a final determination by the commission. So your position all along has been that the district court was perfectly within its rights to go ahead again with the proceedings once the commission had entered its order and pending a remand if one occurred from this court to the commission. Now, our questioning of your opposing counsel has been along the lines, or at least one aspect of it, has been along the lines of whether they have somehow forfeited their rights to make this argument because they have not pressed the contention that the stay should have been sought throughout this period. But you're taking, your legal position with respect to finality would seem to disable you from making that argument because what you're saying is their construction is the basis of their assumption that once the commission had finished its work, that all So you're really, you're not arguing, I take it, that when they didn't argue to us on appeal, that this whole action should be stayed, that they dropped the ball and lost their opportunity to come to us now with a mandamus. Well, I do, I think particularly in terms of this statute, Your Honor. Well, you see what I'm asking, because what I'm saying is, you're arguing on the one hand that your construction of the statute is correct, and you're waver that the construction that Judge Dyke proposed is correct, and it seems to me you really can't have that both ways, can you? Well, I don't know why not, actually. I don't know. Well, it would be lovely from your perspective, so I can see that, but I'm not sure logically why not. Well, certainly I think I can take a position that my adversary was correct in its interpretation of the statute, but that they did nothing to preserve their right in the event that they were not correct. I see. And if I may, I'd like to get to the waiver issue, because as I say, I think the facts as presented to the court were incorrect. There is such a thing as waiver of waiver, and that is actually, you know, comes up from time to time, and if a party does not pursue the argument that their adversary has waived an issue, then they may waive the right to contend that there's waiver. But go ahead. Can I actually just ask you one other question? What did you say in response to the in May, I think, they went to the district court and they said, please give us a stay of these proceedings pending the appeal, and you opposed that, I assume, right? That's correct, we did. And you said in opposition to that what? That there are issues that are not pending, the statute does not provide for a stay five years after the proceedings were commenced in the district court in the United States City, and that it would be inappropriate at this point to enter a stay and have it bounce back and forth, as your Honor said, between the Commission and the Court of Appeals and the Commission and a stay and a lifting and a stay and a lift. Did you argue that the state statute only applied up to the point of final judgment by the ITC? No one raised that, Judge Dockman, at the district court, nor Frick County, nor Philipson, so there's nothing to respond to. If I may, I'd like to That has to have been the basis for the district courts going ahead, right? It must have been understood by the district court, and not contested by the parties, that that was the reason the district court was in a position to go ahead, right? Yes, but no one said to the district court... We're talking about way back when, after the district court, when the district court first got going with the first round of summary judgment proceedings. It was in 2004. Right. No one said to the district court in May of 2006, you had it wrong back in after 2004. No, no, no, but I'm sorry, that wasn't the question. The question is, in, I guess it was April of 2004, April 16, 2004, they asked for a stay pending the appeal, and you opposed that. Correct? Incorrect. Judge, let me run through the history, if I may. Okay. The ITC issued its final order on March 11, 2004. On March 15, Phillips wrote to the district court saying it was appropriate to now lift the stay that was granted under 1659, because the ITC determination was final. The district court granted that and scheduled a hearing on April 16. In that month, between March 15 and April 16, Prinko said nothing. We came to the April 16 hearing. But my understanding was that they opposed the lifting of the stay. They did not. They did not. Either in the hearing or in any submission. We'll get to the hearing. And at the hearing, Prinko asked for a stay and asked for discovery and asked for a briefing on summary judgment, but they specifically addressed their stay not to 1659. They addressed their stay to the discretion of the district court. There was no mention made in the April 16, 2004 hearing of a stay requested under 1659. The only time that Prinko has raised 1659 between March of 2004, when the ITC issued its determination and the district court listed the stay, is all the way over to May of 2006. That gap of two years certainly constitutes a waiver to come back now and say 1659 requires that a stay be entered. Where do we find that part of the hearing? I'm looking at tab 5, page 3, note 5, where Prinko acknowledged that Prinko asked for a stay pending appeal. I'm going to have to prove a negative by citing to the entire transcript because as I say to Judge Dyke, if one looks at the entire transcript... Well, there's a quote in that footnote that something was said... Prinko at the April hearing was silent of lifting of the 1659 stay, but directed its request to a stay to the discretion of the district court, not 1659. But they requested a continuation of the stay, the stay having been granted under 1659, correct? I don't know if that's correct. I know that they did not mention 1659, and I know that they did ask for additional discovery, they did ask for a briefing schedule, and the district court put it to them, I take it you want to make a motion for summary judgment, their answer was yes. Well, of course, you can always plead in the alternative in a situation like this. The language that's, at least in the quoted material that Judge Dyke referenced, and I guess Judge Lynn the same thing, is that what we would like to do is continue the stay in this case. And continue the stay since 1659 was not mentioned, directed to the discretion of the district court. Now, maybe continuation The earlier stay was not pursuant to 1659? The earlier stay was pursuant to 1659. Well, then doesn't this language then tie directly back to that stay, and isn't the natural read of that that they were seeking at that time to continue the stay under 1659? I don't think so, Judge Lynn, for the following reason. I think if you are citing to a statute that provides a stay, that you then discuss the statute, or at least mention the statute during the course of the argument. Now, maybe they've gotten out by saying that they wanted the continuation of the stay and continuation necessarily implies that it was granted under the statute, but I take that transcript and I take what was being asked for there was not a 1659 stay. Well, suppose we disagree with you. Suppose we say that as Judge Lynn suggested, the continued stay meant 1659, that it was a request for a continued stay under 1659. Let's assume that we reach that interpretation of what they requested. Under those circumstances, with that assumption, I know you disagree with it, but with that assumption, were they diligent? I would say no you are, because they're now coming seeking mandamus relief two years after the district court denied that relief. How can one say that you've appropriately sought the extraordinary relief of mandamus and not turn this proceeding into a run-of-the-mill interlocutory appeal? But you've never argued that they should, they were, they failed in their diligence by not pursuing a stay pending appeal. You haven't argued that in the paper here, or so far as I can tell, anywhere else. I believe we have argued in our papers. The issue of whether it was appropriate in the papers that we submitted in opposition to the mandamus petition. Here? The issue of whether the stay should have been appropriately lifted in 2004 was not in any of the papers. None of the parties briefed that issue in the mandamus petition. But if Judge Dyke, you're saying that they did make a request under 1659 to continue the stay in 2004, I think it is absolutely correct that they have waived any right to mandamus by the extraordinary nature of mandamus itself, to wait two years to seek to have a decision by the district court not to continue the stay in 2004 now in 2006. But you've never argued, as I understand it, that they were lacking in diligence because they didn't pursue the stay with this court during the appeal in Phillips 2. I believe we did argue that. We argued that they lacked diligence in two respects. Once this court issued Phillips 1, if the common issues were pending, which they are not, they should have come to this court and said do not continue with the appeal in Phillips 2, don't have oral argument, don't issue your mandate because the case should be stayed. Second, they also delayed, and this I think we have argued in our papers, they delayed because the district court in June, I believe it was, at the hearing told Prinko when they requested a stay, and it's almost exactly these words, and I think I can exactly quote the district court words, said, I quote, and this is at the hearing in June, I'm not staying unless the federal circuit tells me stop. But that's a different issue. That's a different issue. I'm asking you a very narrow question and that is did you ever argue in the district court or in your papers here that they were barred because they didn't pursue the request for a stay on appeal in 2004? No, Judge Dyck, and the reason for that is because no one argued that it was inappropriate to lift the stay in 2004, so how could we possibly argue that there was a waiver when in the briefing there was no issue about whether it was appropriate to lift the stay in 2004. I'd like to just go back for one second and address the issue before getting to what I think is a significant issue, which is that there are no common issues pending, and I think that this mandamus petition can be disposed of on that issue, but just get to the issue of why in fact it makes sense to interpret the statute as lifting the stay when the ITC acts, but also why issuing mandamus now would have no practical effect. Certainly, Judge Dyck, if the district court was wrong, issuing mandamus would have a corrective effect, but practically nothing is happening in the ITC. The parties are waiting for the ITC to issue its decision. Nothing is pending in the district court other than damages, which as a matter of the ITC jurisdiction does not have any ability to say anything or deal with. It is only damages in the district court. Nothing is happening in the ITC. If this court were to issue mandamus, all it would be would be delay for the sake of delay. But once the ITC decision is decided, the only issue remaining in the district court is damages, and we would proceed. Now, as to the request for another Are you saying that the district court's grant of summary judgment would have no bearing whatsoever on the ITC's determination? It does not for this reason, Judge Lynn. This goes back to the reason as to why there are not common issues pending. In the ITC, this court in Phillips had no patent issues based on time. If anything was decided in Phillips 1, it was that issue. And not only did it decide that in Phillips 1, but in the decision in Phillips 2, this court told the district court what it decided in Phillips 1. And it said that it decided in Phillips 1 that there was no patent issues based on time, non-essential and essential patents together. That issue was finally decided in the ITC proceeding upon the issuance of this court's opinion in Phillips 1. The court in Phillips 1 did not remand. It reversed and remanded. And what it reversed was the decision on patent issues based on time. That issue is not pending in the ITC, no matter what Prinko says about the Logadech patent. It's said a lot of things about Logadech. It's talked about price-based pending. It's talked about antitrust damages because of tying different standards together and eliminating competition of standards. But one thing it cannot raise about Logadech and the ITC after Phillips 1 is patent issues based on time. I'm confused. I thought that you were arguing before the ITC, and this follows up on Judge Lynn's question, that the district court decision which we're confronting here was collateral estoppel in the ITC proceeding and was a bar. Am I mistaken? We have made that argument in the alternative. We have said to the ITC first the issue that the district court decided, patent issues based on time is not pending before you. And I can cite to your honor some language and submissions that we've made. This is from February 21, 2006 to the ITC. The Federal Circuit's decision in the ITC matter stresses that proof of harm to competition requires evidence that they were commercially viable substitute for non-essential patents. It goes on and on to discuss what was decided in Phillips 1, which is patent issues based on time. We then go on to say that to the extent that you think you still have that issue in front of you, then you can apply the district court decision. But it sounds to me as though you're asking us to make a determination and instruct the ITC as to what the scope of the issues are before them by deciding that the issue in the district court is not before the ITC. Not at all. With respect to Judge Dyke, what this court will have to do if it grants mandamus is to have to look at the statute 1659 and decide whether common issues are pending. And if one looks simply at what is going on in the district court, and the decision that Prinko hasn't raised here, which was a decision that the district court issued before the summary judgment decision saying that the only issue pending before it was patent issues based on time. And if you look at what happened in Phillips 1, it is virtually unassailable that there are not common issues pending in the ITC and the district court. But it seems to me, at least with respect to your alternative argument, a vacatur of the district court summary judgment determination would in effect eliminate that alternative argument. It would eliminate that alternative argument. And if they really aren't co-pending issues, it wouldn't hurt you. It would not hurt us to have that. To vacate the district court. Not at all. But what we need to be able to do, and why the district court should be able to manage its own docket in a case that's been pending for five years, is we need to finally proceed to a damage trial, which of course no one suggests will be impacted by the ITC decision. There are no common issues pending. And I think that's plain. But what does common issues mean? Common issues must mean issues that have been raised by the parties. And Prinko is certainly raising this issue, which you say is not appropriately part of the ITC proceeding. Judge, I would respectfully disagree. I think it would be a dangerous precedent to say that all a party has to do in order to obtain a 16-15 on stay is to raise a crazy issue in front of the ITC. But they are raising what you characterize as the crazy issue. They are raising it, but if you look at Phillips 1. And the ITC hadn't ruled on that, right? But if you look at Phillips 1, Judge, this court did rule on that issue. There can be no doubt that in Phillips 1, this court disposed of patent misuse based on time in Phillips 1. Well, disposed of. I mean, I remember the case fairly well. My recollection was that the interaction between the rule of reason analysis and the per se analysis got very complicated. And we decided certain issues and we remanded on other issues. It wasn't a decision which said this case is over. We did have to remand. So there are I don't know what the commission will do. The commission may read that case very broadly, but they may also read it narrowly I suppose. And we're in a somewhat awkward position of having to guess as to what it is that's before the commission, before we know what the commission regards as being within the ambit of its proposed decision. I think we know there's a March 21, 2006 order issued by the ITC. And I think the ITC clearly understands what this court directed it to do in Phillips 1. And that order says quote, the commission specifically requested comments as to how it should proceed with those positions of the October 24, 2003 final initial determination of the presiding administrative law judge upon which the commission did not take a position. So the commission is well aware that what is before it is exactly what the final paragraph of this court's opinion in Phillips 1 said. The final paragraph of that opinion said we have decided what the commission ruled, and we reversed on that. That's patent misuse based on time. But that the commission did not address other aspects of the ALJ decision, and so you remanded it for the commission to consider that. And the commission understands exactly that, and that's in its March 21st order. There really can be no legitimate dispute. Now, yes, Krinko has raised it, but there can be no legitimate dispute that both the commission, the court in Phillips 1, and really everybody else, understands that patent misuse based on time is not pending before the ITC. The commission recognizes that it was reversed on that issue and it was decided, and that what is pending before the ITC are those portions of the administrative law judge initial decision that it did not address in the opinion that this court reviewed in Phillips 1. But my recollection, and on this I have to confess that I am fuzzy, but my recollection is that, number one, that there was a lot in what the administrative law judge wrote that was not reviewed by the commission. And my second recollection, correct me if this is wrong, but that some of it touched, at least with respect to certain aspects of the transactions that were under review, on the whole tying issue. Now, it may be foreclosed legally, I don't want to get ahead of ourselves here by something that we may have said, analytically it may be foreclosed, but I recall what was left unaddressed in our opinion, including some slash misuse contentions. Is my recollection correct? I think it is correct. I think there are three parts of that statement, and those three parts are that there were other patents that this court did not address in Phillips 1 that were alleged to have been tied. But Judge Wesson, I think you're also correct that consideration of time, whether the patent is called Smith, Jones, or Lagenheck, is foreclosed by Phillips 1. And the reason for that is that in Phillips 1 this court said that when you pool together patents that are essential and non-essential, there is no forcing. A critical, necessary element of time. There's no forcing because the licensee is not required to do anything, and that's precisely what this court decided in Phillips 1. That's one independent ground on which time is not pending in front of the ITC as a matter of law. The second independent ground is that this court found that there was no evidence of any adverse effect on competition because there was no evidence that any licensee had looked at any alternative to the non-essential patents. That's the record that the ITC is working with. So that's a second independent basis on which the ITC recognizes in this order which is Exhibit 4 to our response to the petition, that it's not dealing with misuse based on time. And the third independent ground that this court said in Phillips 1 to finally decide the time issue in the ITC matter is that the court said that there was no use of market power in one market, the essential patent, to force anybody to do anything in another market, the non-essential market. So this court reached patent misuse based on time in Phillips 1, which was the only issue that the ITC reached on the ALJ determination, reversed that, and again, I'd like to respectfully direct you to the last paragraph of the opinion in Phillips 1. It said to the commission, there are lots of things you didn't look at that the ALJ decided. Now you've got to take a look at those things. But this issue that you're just raising about lack of common issues, I'm correct, am I not, that you didn't argue that here before the district court or in your opposing brief before us? No, we did, Your Honor. You did? We did. And I can cite Your Honor to... You mean the brief on the Mandamus? Yes, we did. But none of this came up in the last appeal. The whole issue of the state wasn't argued. And Judge Young, I'd cite you to page 14 of our opposition in which we say, in addition to the fact that no purpose would be served by the state because the issues in the district court and the ITC are completely distinct. That's it. I must admit that I missed some of the forest for the trees, but we did make that argument. And so, again, I think that the issues are not common. And I'd like to move very quickly, if I may, to another statute which is not here, which is, of course, the fact that we're talking about entering a stay five years after this proceeding has commenced. The statute specifically talks about entering a stay only if requested within 30 days of the party becoming a proceeding. Well, it's the request that has to occur within 30 days, not the stay, I take it. Then I think, Judge Weiss, we'd have to go back to the argument as to whether it was appropriate to lift the stay, in which I would argue that seeking mandamus on that decision more than two years later is just simply too late. And I'd like to suggest going back as well that maybe it actually makes sense not to read final in 1659 any differently than this court reads final in Zapata jurisdiction. As your honors know, 1659 was enacted because of a gas dispute resolution report that found that there was some discrimination between domestic and foreign parties. 1659 was tried to address that, and of course there are very, very different burdens that parties face when they are dealing with proceedings in the district court and an evidentiary hearing in the ITC. Those burdens are quite different once the ITC reaches its decision as shown here, because what's happened in the eight and a half months in the ITC since Prinko requested either a new stay or the reintroduction of the stay is really very little. In those eight and a half months since Prinko has requested a stay, what Prinko has done in the ITC is, one, the day after it requested the stay, filed a brief in opposition to Phillips filing a reply and written two letters to the ITC. That's it. That's all that's happened in the eight and a half months since Prinko requested a stay in the ITC. And so the burden on the parties and the whole gap report is really quite different once the ITC finishes its adjudicative evidentiary hearing. And so I think in that way it makes sense to read final in 1659 as being the same as this court's appellate jurisdiction, and with respect I also think in the way the language in Fujifilm, Fujifoto also comes up. So that would be, I think, another reason why it would be appropriate to read final as meaning that the stay should be lifted once the ITC issues its decision and this court has appellate jurisdiction. Finally, Your Honors, I would just respectfully submit that this is not an appropriate case for mandamus. Mandamus requires the use or placement of judicial authority or the clear use of discretion. I think as we've discussed here, these are difficult issues. The Supreme Court has cautioned that mandamus should not be used merely because the district court has erred. Here, again, no practical purpose would be served by entering a stay. The only issue in the district court is damages, which the ITC has no jurisdiction to even comment upon. Even if one assumes that the stay should have been granted prior to the grant of summary judgment, the issue of patentless use based on time is not pending in part of the case. I respectfully suggest mandamus should not be granted. Thank you, Mr. Beeney. Your time has expired. Thank you. Now, I think we have reserved five minutes for rebuttal. We gave Mr. Beeney a fair amount more than that extra time. If you need a little more time, you should feel free to take it, but don't feel that you need to take all of the time that may be available. Let me dispose of a couple of issues up front. I don't know how emphatic it's appropriate to be at this podium, but let me say crystal clear the same issues were pending, no doubt about it. The OUII wrote a brief exactly on the Lagedec issue, the Lagedec patent. Lagedec presented an entirely new set of issues, quite different than the four patents presented in Phillips 1, or the remaining eight. The Lagedec issue was a patent that was not essential, that could not be used. It was an unusable patent, but the reason why it was in the package still was because of an unlawful tie. It was a tie that presented issues not addressed in Phillips 1. We briefed it to the ITC after appeal, or after remand. The OUII briefed it to the ITC after remand. No doubt about it that that was in front of the ITC common issues. And I would argue further that there were common issues as to the remaining eight patents. Phillips has argued in effect that the finding in Phillips 1 has raised judicata on all the other patents. We categorically disagree. Phillips 1, the court talked about insufficient evidence, not rulings of law. Insufficient evidence. There was insufficient evidence on these four patents that there was an adverse impact on this environment, or there were commercially viable alternatives. Insufficient evidence was the ruling of this court in Phillips 1. It was not preclusive as a matter of law. But that is secondary to the clear statement I want to leave with this court, that Lagedact was pending, everybody briefed it, everybody knew it. The district judge was instructed to resolve his case in light of Phillips 1. We presume that he did that, that he read Phillips 1. He understood that it was remanded to consider evidence and arguments and issues not considered the first time. For example, the possible beneficial impact of package licenses. Another issue, this court instructed the ITC to consider, or the commission to consider, in resolving Phillips 1. No doubt the common issues were pending between the two. Judge Dyke is correct that the argument being presented here today, that there was a waiver by Prinko by not diligently pursuing that the stay be imposed is being prompted for the first time by Phillips today. They have taken two different positions on this issue. They are the ones who moved the court to lift the stay because there was no longer common issues pending. Well, to be precise, they do make an argument of waiver with respect to certain points in the process. I think I take it that you're saying well, they didn't make an argument with respect to pressing upon us in the first appeal, for example. That's correct. Between 2004 and 2006. But once we get back to 2006, they do make in their response to your mandamus petition they do make waiver arguments at several points between June and October of 2006. Indeed. And one of the impressions I hope I left with the court is that we asked five times that 1659 stay be put back in place. Five times. The court never ruled on that until October 24th. After the court accepted the summary judgments and by his own order said he resolved the same issues. Literally out of the order itself the quotes from the order is he resolved the same issues, therefore the same issues are no longer pending. Let me just read from the order. He wrote, that defense has now been rejected by the court and therefore there are no issues before the ITC that affect resolution of this case. That is just wrong. As to the question of whether or not the case should be stayed and the order vacated, Phillips argues that it just makes no sense to do that at this point. Well, what Phillips asked this court to do is simply ignore the fact that the district judge in open defiance of this statute refused to grant the stay. It's crystal clear that he did not refuse because there weren't common issues. He didn't refuse because the timing was off. He refused after he resolved the common issues. He waited to resolve the summary judgment before he denied that stay. There was nothing prior to October 24th that evidences to the contrary. There's a suggestion that nothing is happening in the ITC. There's no evidence about what's working diligently around the clock on this case. I think that's a red herring that this court should not consider. The statutory scheme is laid out in 1659. It is crystal clear what Congress wanted the district court to do, to stay the proceeding, not pending quick action by the ITC or slow action by the ITC, but by completion by the ITC and then transmittal of the ITC record to the district court for its consideration. We suggest that there could be plenty happening in the ITC, but that is not the right place for this court to look. It's the words of the statutes itself. Additionally, there's no doubt that the ITC is going to take this order into consideration. Phillips is not presented as an alternative. It is said, this is collateral estoppel issued claim for collusion. The ITC, we have every reason to believe, would be sensitive to that, would be motivated by that. And therein lies the subjugation, the subversion of what Congress intended by 1659, both in the plain words of 1659, as well as the acknowledged consensus regarding the legislative history and congressional intent. So there were not common proceedings. Finally, I would address the question of usurpation. I think in the Supreme Court made clear that the notion of jurisdiction as that was used in 1651 is to be interpreted broadly, where there is a case of usurpation or clear abuse of discretion. And this Court, in cases like Ingray-Mark, where the Court refused to apply the statutory presumption of validity under 282, or in Mississippi Chemical, where the District Court refused to acknowledge the collateral estoppel effect of a blunder-tongue type, earlier finding invalidity, found that those were appropriate environments to apply the mandamus authority, where they said the very right, that blunder- tongue, the very right, 282, is to extend to the party, has been undermined by them not enjoying the benefit of that right. Precisely the case here. Congress has said, prinko, Congress has said, foreign inquirers should not have to litigate in two forms. We are and have been forced to do that. That is exactly the kind of environment where this Court has said mandamus authority is appropriate. And I'd also, one more final point, the Intertron Diagnostics case, cited in the briefing, also points out an environment where a petition of this nature is appropriate, and that is where the facts are intimately bound up with or directly implicate patent law. Clearly in Intertron Diagnostics, where the Court was asked to compare an antitrust claim to a patent claim, is less directly implicated in patent law than where the District, or where the Federal Circuit is asked to compare a patent misuse case in the ITC and a patent misuse case in the District Court. Directly implicates patent law. And again, on that basis we will submit that it's appropriate for this Court's mandamus power. Very well. Thank you. And we thank both counsel they are even stifle to the Court. Appreciate it. Case is submitted. All rise. The Audit Board is adjourned.